**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHELLE LYN KOZUCH, ) | |
| ) | Civil Action No. 1:24-cv-00329-KT |
| Plaintiff, ) | |
| ) | Magistrate Judge Kezia O. L. Taylor |
| v. ) | |
| ) | |
| FRANK BISIGNANO ) | |
| Commissioner, Social Security, ) | |
| ) | ECF Nos. 13, 14 |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

Plaintiff filed an application for supplemental social security income, based on mental and physical impairments. Her application was denied initially and, again thereafter, upon hearing by an Administrative Law Judge ("ALJ"). The Appeals Council denied her request for review. Before the Court are the parties' Cross-Motions for Summary Judgment.[2] For the following reasons, Plaintiff's Motion for Summary Judgment, ECF No. 13, will be denied and Defendant's Motion for Summary Judgment, ECF No. 14, will be granted.

**I.   FACTUAL BACKGROUND**

On June 18, 2021, Plaintiff filed applications for benefits for Social Security Disability ("SSD") insurance benefits and Supplemental Security Income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act. R. 256-265. These filings were based on claims of disability beginning May 10, 2009, due to, *inter alia*, various mental health disorders, as well as

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. ECF Nos. 4, 10. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

[2] The Court is construing Plaintiff's Brief, ECF No. 13, and Defendant's Brief in Opposition, ECF No. 14, as cross-motions for summary judgment. The Court has also reviewed the entirety of the record as filed and certified at ECF No. 5.

fibromyalgia.  R. 256, 304.  The application was denied initially on August 14, 2023, R. 162-165, and September 26, 2023, R. 167-170, and upon reconsideration on February 12, 2024, R. 178-180, 182-184.

A representative was appointed for Plaintiff and a *de novo* hearing before an ALJ was requested.  R. 173-177, 186-188.  The ALJ held a hearing on August 6, 2024, at which Plaintiff, who was represented by counsel, withdrew her Title II claim but proceeded on her Title XVI claim.  R. 11.  At the hearing, Plaintiff offered testimony, R. 41-61, as did a vocational expert ("VE").  R. 61-68.  By decision dated September 16, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 10, 2009, Plaintiff's alleged disability onset date, through the date of that decision.  R. 8-26.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 22, 2024.  R. 1-7.  Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  ECF No. 1.  The parties have both filed briefs, ECF Nos. 13, 14, construed by this Court as respective motions for summary judgment.  Consequently, the matter is ripe for disposition.

## II.     LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's final decision on disability claims is provided by statute.  *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).  When reviewing the Commissioner's final decision denying a claimant's application for benefits, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact.  *See* 42 U.S.C. § 405(g).  *See also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Section 405(g) permits a district

court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. *See* 5 U.S.C. § 706.

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored the limited scope of a district court's review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ___, ___, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see*, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as

3

>  adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"). A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). *Cf. Brunson v. Astrue*, No. 10-CV-6540, 2011 WL 2036692, at *5 (E.D. Pa. Apr. 14, 2011), *report and recommendation adopted*, 2011 WL 2036691 (E.D. Pa. May 23, 2011) ("If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently").

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the claimant is not disabled. *See* R. 11.

At step two, the ALJ decides whether the claimant has a "severe impairment" or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled. Otherwise, the ALJ proceeds to step three. *See* R. 11.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four. *See* R. 11.

At step four, the ALJ must determine the claimant's residual functional capacity ("RFC") and determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the claimant can perform past relevant work, then the inquiry ends because the claimant is not disabled. Otherwise, the ALJ proceeds to the final step. *See* R. 11-12.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the claimant can do so, then the claimant is not disabled. Otherwise, the claimant is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. *See* R. 12.

### C. The ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 2, 2023, the protective filing date, and the date of this decision. R. 13.

At step two, the ALJ found that Plaintiff has suffered from the following severe impairments: fibromyalgia, palpitations and sinus arrhythmia, hypertension, residual effects of gastric sleeve including epigastric pain, history of gastroenteritis and colitis, history of gastroesophageal reflux disease (GERD) with esophagitis, history of obesity, Autism spectrum disorder, major depressive disorder, borderline personality disorder, and insomnia disorder. R. 13-14.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). R. 16.[3]

At step four, the ALJ found that Plaintiff

> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she can have frequent exposure to hazards (e.g., heights and moving machinery). She is able to understand, remember, and carry out simple instructions; requires low stress work (i.e., occasional simple decision making and occasional changes in the work setting); she can have occasional interaction with coworkers and supervisors; and occasional interaction with the public.

R. 14. At step five, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a)." R. 19. Relying

---

[3] Page 4 of the ALJ's Decision is out of order, as it follows Page 6.

on the testimony of the VE, the ALJ found that "an individual with the [Plaintiff's] age, education, work experience, and residual functional capacity" would be able to perform the requirements of both medium, unskilled and light, unskilled jobs in the national economy, including linen room attendant, box bender,[4] dryer attendant, marker, garment sorter and classifier. R. 20. The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 2, 2023, through the date of this decision (20 CFR 416.920(g))." R. 21.

### III.   DISCUSSION

As set forth above, the question here is not whether Plaintiff is disabled. Instead, the Court must determine whether substantial evidence supports the Commissioner's finding that she was not. Here, Plaintiff disagrees with the ALJ's findings at step five based on asserted flaws in the VE's testimony and asks that the decision of the Commissioner be vacated and remanded for further proceedings, "including a new hearing and new decision." ECF No. 13 at 4-9. The Commissioner takes the position that his decision should be affirmed because, notwithstanding Plaintiff's attempt to undermine the VE's testimony, the ALJ's decision was supported by substantial evidence. ECF No. 14 at 1, 3-5.

After careful consideration of the entire record, the Court finds that the ALJ's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. §§ 405(g); 1383(c)(3). *See also Biestek*, 587 U.S. at 102-03; *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial

---

[4] While both the ALJ's decision and the hearing transcript identify this position as "box vendor," R. 20, 62, 66, the correct title of this position is "box bender." *See* ECF No. 13-1 at 1 (identifying DOT § 641.687-010 title as "Box Bender"). *See also McGee v. Kijakazi*, No. 22-CV-79, 2023 WL 2602070, at *1 n. 1 (W.D. Pa. Mar. 22, 2023) (identifying the position of box bender, citing DOT § 641.687-010). The Court will use the correct title here throughout.

evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

Plaintiff presents a single issue in this appeal: "whether the testimony of the VE proffered by the Commissioner contained such striking discrepancies with SkillTRAN, the occupational source he purportedly relied on, that such testimony cannot be deemed substantial evidence in support of the ALJ's Step Five findings." ECF No. 13 at 4-9. More specifically, with respect to the ALJ's determination at step five, Plaintiff argues that "the ALJ failed to produce reliable and substantial evidence to support the conclusion that those occupations constitute a significant number of jobs in the national economy." *Id.* at 4.

Plaintiff contends that the Commissioner failed to meet its burden at step five of the disability determination process because the ALJ based his decision on unreliable testimony from the VE. According to Plaintiff, "the vocational expert's wildly inflated job numbers estimate for 5 of the 6 jobs provided at Step Five (all except marker) severely undermines the accuracy of his testimony, thus calling into question whether he is even using SkillTRAN properly." ECF No. 13 at 8. Thus, Plaintiff asserts that substantial evidence does not support the step five determination. *Id.* The Commissioner disagrees. ECF No. 14 at 4-5.

During the hearing, the ALJ called a VE to testify. R. 61. Plaintiff's hearing counsel stipulated to the VE's qualifications to testify as a VE. *Id.* The ALJ first asked with respect to a person who is limited to medium work activity, whether there were "any jobs as is in the national economy such a person could perform?" R. 62. The VE testified that an individual with Plaintiff's vocational profile and RFC could perform the jobs of: linen room attendant, DOT code 222.387-030 (Estimated jobs nationally at 54,000); box bender, DOT code 641.687-010 (Estimated jobs

nationally are 26,000), and dryer attendant, DOT code 581.686-018. (Estimated jobs nationally is 11,000). *Id.*

The ALJ then asked with respect to a person who is limited to light work activity, whether there were "any jobs that exist in the national economy such a person could perform?" R. 63. The VE testified that an individual with plaintiff's vocational profile and RFC could perform the jobs of: marker, DOT code 209.587-034 (Estimated jobs nationally of 59,000); garment sorter, DOT code 222.687-014 (Estimated jobs nationally of 22,000), and classifier, DOT code 361.687-014 (Estimated jobs nationally of 55,000). *Id.*

During cross-examination by Plaintiff's counsel, the VE explained his methodology as follows:

> I use a software called OccuBrowse Plus developed by Skill TRAN. This gives me the [Dictionary of Occupational Titles ("DOT")] information and the [standard occupational classification ("SOC") system] job numbers for each DOT grouping; I take that information, and I use it as a starting point. In addition to that information, I use the information that I gather from my extensive work with job placement and contact with over 70 other VEs around the country. We take the information that we gather from our research from specific jobs and form those job numbers for each position nationally. We then reduce the number by 50% to eliminate any part-time work composite positions. So, these positions I identified and the numbers I provided are -- I believe are conservative estimates of what I think exist nationally.

R. 65. When asked if he had "placed individuals at all of those types of positions?" the VE responded, "I have over the years, yes." *Id.* The VE was then asked about another software program, ONET,[5] to which he responded, "I'm familiar with it. I don't use it, I use SkillTRAN."

---

[5] Upon inquiry from the ALJ, Plaintiff's counsel explained ONET as follows: "Essentially, it is a tool that is used by OccuBrowse. It's a -- basically in the Department of Labor it's a summary more of what the job actually entails. In other words, what are the physical demands of the job, a more -- a greater description of the job details, both physical and mental, that is more descriptive and more current than the DOT. That's the best way I can describe it." R. 67.

*Id.* The VE further agreed that he believed that ONET was "a reliable source of vocational information." *Id.*

The VE was then asked, "are you familiar with the methodology that OccuBrowse uses to provide you with the job numbers by DOT code?" to which he replied, "I'm familiar with it, it's listed on their website, but I don't have it in front of me." R. 67. Plaintiff's counsel then questioned the VE about whether OccuBrowse "use[s] an equal distribution method in obtaining those job numbers?" to which he answered, "If they do, I'm not aware of it." R. 68.

At that point, the ALJ interjected, and Plaintiff's counsel explained that he had issues with the OccuBrowse software and the data it produced, and the lack of additional testimony to explain the results in conjunction with the software's internal methodology. R. 68-69. However, when asked if he had "[a]nything else," Plaintiff's counsel responded in the negative. *Id.* Consequently, while Plaintiff's counsel expressed his concerns with the numbers produced by the VE, he did not pursue this line of inquiry with the VE, nor did he present any additional testimony or exhibits during the hearing. R. 69.

The ALJ ultimately rejected Plaintiff's challenge to the VE's opinion, concluding that

> [t]he vocational expert has professional knowledge and experience in job placement. The vocational expert's job numbers are from sources of information administratively noticed under the regulations. 20 CFR 416.966. The vocation[al] expert also explained how the job numbers were estimated using Skilltran, additional research, and reducing the numbers to provide conservative estimates. Accordingly, the vocational expert's job information is found to be reliable.

R. 20. The ALJ also explained that "[a]lthough the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The DOT does not address low stress work, occasional changes or decision making, simple tasks, interactions, climbing specifics, off-task time, or absences. This

10

testimony was based on the VE's training and experience in the vocational field. The VE's testimony is accepted in accordance with SSR 00-4p." *Id.*

The ALJ then concluded that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule." *Id.*

The Commissioner bears the burden of demonstrating that the claimant can perform jobs existing in the national economy at the fifth step of the sequential analysis. *See Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). The United States Court of Appeals for the Third Circuit has stated that "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act," *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (citation omitted), and in fact, has held that the Commissioner's burden is satisfied if the ALJ identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform. *See Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)).

Plaintiff argues that the VE's testimony was flawed based on job numbers appended to her brief. *See* ECF Nos. 13-1; 13-2. *See also* ECF No. 13 at 6. According to Plaintiff, the VE's job numbers lacked any reliability where he provided a "wildly inflated job numbers estimate for 5 of the 6 jobs provided at Step Five" in contrast with the numbers presented in Plaintiff's brief and exhibits. *See* ECF No. 13 at 6-8.

In general, although the Federal Rules of Evidence do not apply in Social Security proceedings, an ALJ may only rely on a VE's opinion where it rests on a sufficient foundation,

such as "personal experience, labor market surveys, and published statistical sources." *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (summary order).  The Supreme Court has explained that whether a VE's opinion amounts to substantial evidence must be determined on a case-by-case basis, and that opinions clearing that bar must typically have some "markers of reliability." *Biestek*, 587 U.S. at 108.

In this case, the Court finds that the VE's opinion amounts to substantial evidence for the ALJ's step five determination.  Notably, the VE testified that he based his opinion "on [his] education, training, and experience in the vocational field."  R. 64.  The VE generally explained his methodology in that he obtained a set of job numbers based on DOT and SOC codes from the OccuBrowse software and then reduced those numbers down to reflect Plaintiff's RFC based on his experience and knowledge of labor market trends.  R. 65.  Thus, the VE's opinion had sufficient markers of reliability for the ALJ to rely upon it.  *See Jones-Reid*, 934 F. Supp. 2d at 407 (finding that the ALJ did not err in relying upon VE testimony based on "reliable statistical sources as well [as] personal knowledge and experience").  Indeed, the VE's reliance on his education and experience in the field, OccuBrowse and the DOT, constitutes "more than a mere scintilla," *Biestek*, 587 U.S. at 103, and provides an adequate foundation for the VE's estimates.

Regarding Plaintiff's argument, it is important to understand the limited scope of the Court's authority in this matter.  Here, 42 U.S.C. § 1383(c)(3) permits a district court to review a final decision of the Commissioner of Social Security to the extent permitted by 42 U.S.C. § 405.  However, judicial review is based solely on the pleadings and the transcript of the record, and the scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589,

592 (3d Cir. 2001); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues and reviews the findings of fact of the ALJ to determine whether they are supported by substantial evidence).  Therefore, the Court here is limited to reviewing the record before it to assure itself that it adequately supports the ALJ's decision that Plaintiff was not disabled during the relevant time period.  Evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence.  *See Matthews*, 239 F.3d at 594; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011).  *See also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Thus, to the extent Plaintiff points to lower job numbers calculated by different software, such a discrepancy would not render the VE's opinion invalid because this evidence was not presented to the ALJ.  The Court's review of the ALJ's decision is confined to whether substantial evidence, *in the record as it was reviewed by the ALJ*, supports the decision and whether correct legal standards were applied.  Even if there is other evidence that may support Plaintiff's position, the Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*)). *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705).

In considering the entire record, and given the evidence outlined above, the Court finds that the ALJ supported the decision with substantial evidence, especially in light of the United

13

States Supreme Court's reminder that the threshold for meeting the substantial evidence standard "is not high." *Biestek*, 587 U.S. 103.

## IV.    CONCLUSION

Although Plaintiff suffers from several serious ailments, it is not for the Court to overturn the ALJ's decision if that decision is supported by substantial evidence. After careful review of the record, the Court concludes that the decision rendered by the ALJ is supported by substantial evidence. For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 13, will be denied and the Defendant's Motion for Summary Judgment, ECF No. 13, will be granted. Accordingly, the decision of the Commissioner will be affirmed.

An appropriate Order will follow.

Dated:  December 9, 2025                                  **BY THE COURT**


                                                             /s Kezia O. L. Taylor
                                                          KEZIA O. L. TAYLOR
                                                          United States Magistrate Judge